IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ZACHARY MULLINS, ALEX WRIGHT, MYA LYNN TINCH, AMANDA DELEHANTY, MICHAEL DELEHANTY, and DEVIN GRAHAM<br>c/o Chris P. Wido, Esq<br>The Spitz Law Firm, LLC<br>25825 Science Park Drive, Ste 200<br>Beachwood, Ohio, 44122<br><br>On behalf of themselves and all others similarly-situated<br><br>Plaintiffs,<br><br>v.<br><br>TRUE NORTH MANAGEMENT, LLC.<br>c/o Mark E. Lyden, Statutory Agent<br>10346 Brecksville Road,<br>Brecksville, Ohio, 44141<br><br>-and-<br><br>TRUE NORTH HOLDINGS, INC.<br>c/o Mark E. Lyden, Statutory Agent<br>10346 Brecksville Road,<br>Brecksville, Ohio, 44141<br><br>-and-<br><br>TRUE NORTH ENERGY, LLC<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio, 43219<br><br>Defendants. | ) | CASE NO. 1:22-cv-01932<br><br>JUDGE CHARLES ESQUE FLEMING<br><br>**FIRST AMENDED COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT**<br><br>**AND**<br><br>**COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF THE OHIO FAIR MINIMUM WAGE STANDARDS ACT**<br><br>(Jury Demand Endorsed Herein) |

## INTRODUCTION.

Through a company-wide failure to include a shift differential in the calculation of the regular rate of pay, Defendants True North Management, LLC, True North Holdings, Inc., and True North Energy, LLC systematically failed to pay Plaintiffs Zack Mullins, Alex

Wright, Mya Lynn Tinch, Amanda Delehanty, Michael Delehanty, Delvin Graham. and other similarly-situated employees the proper overtime rate. Accordingly, True North's conduct violated the Fair Labor Standards Act ("FLSA"), 29 U.S. Code § 207. On behalf of themselves and all other similarly situated employees, Plaintiffs bring this collective action for the recovery of unpaid minimum overtime wages under the FLSA, 29 U.S.C. § 216(b). Members of the collective action are referred to as the "FLSA Collective Class Members." Additionally, Plaintiffs bring this collective action under Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio R.C. § 4111.03, on behalf of themselves and all FLSA Collective Class Members who worked for True North in Ohio ("Ohio Collective Action"). Members of the Ohio Collective Action are referred to as the "Ohio Collective Class Members." The following allegations are based upon information and belief, or personal knowledge as to Plaintiffs' own conduct and the conduct and acts of others.

**PARTIES.**

1. Mullins is an individual residing in Franklin County, Ohio. Mullins performed work for Defendants within the last three years for which he was not paid the overtime wages guaranteed by the FLSA. Mullins' signed consent to sue form is attached hereto as Exhibit "A."

2. Graham is an individual residing in Franklin County, Ohio. Graham performed work for Defendants within the last three years for which she was not paid the overtime wages guaranteed by the FLSA. Graham's signed consent to sue form is attached hereto as Exhibit "B."

3. Tinch is an individual residing in Franklin County, Ohio. Tinch performed work for Defendants within the last three years for which she was not paid the overtime wages guaranteed by the FLSA. Tinch's signed consent to sue form is attached hereto as Exhibit "C."

4. Amy Jean Delehanty is an individual residing in Franklin County, Ohio. Amy Jean Delehanty performed work for Defendants within the last three years for which she was not paid the overtime wages guaranteed by the FLSA. Mullins' signed consent to sue form is attached hereto as Exhibit "D."

5. Wright is an individual residing in Franklin County, Ohio. Wright performed work for Defendants within the last three years for which she was not paid the overtime wages guaranteed by the FLSA. Wright's signed consent to sue form is attached hereto as Exhibit "E."

6. Michael Delehanty, a.k.a Jessica Delehanty,[1] is an individual residing in Franklin County, Ohio. Jessica Delehanty performed work for Defendants within the last three years for which she was not paid the overtime wages guaranteed by the FLSA. Jessica Delehanty's signed consent to sue form is attached hereto as Exhibit "F."

7. The FLSA Collective Class Members are all current and former employees of True North who (1) worked at any of True North's stores in Ohio, Illinois, Wisconsin and/or Michigan for any period of time during the three years immediately preceding the filing of this Complaint, (2) who were paid on an hourly basis, (3) who were paid a shift differential or shift premium at least once during their employment, and (4) who worked 40 or more hours during any single week of their employment.

8. True North Holdings, Inc. ("TNH") is a domestic corporation with its principal place of business located in Cuyahoga County, Ohio.

9. True North Management, LLC ("TNM") is a domestic corporation with its principal place of business located in Cuyahoga County, Ohio and is a subsidiary and/or affiliate of TNH.

---

[1] Michael Delehanty identifies as female and goes by "Jessica" but has not legally changed her name. Michael Delehanty is hereinafter referred to as "Jessica Delehanty."

10. True North Energy, LLC (TNE) is a foreign corporation whose principal place of business is located in Brecksville, Ohio and is a subsidiary and/or affiliate of TNH.

11. TNH, TNM, and TNE are hereinafter referred to collectively as “True North.”

12. During all times material to this Complaint, the True North was Plaintiffs’ and members of the opt-in classes’ “employer” within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

**PERSONAL JURISDICTION.**

13. True North is an Ohio Corporation; hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over True North comports with due process.

14. This cause of action arose from or relates to the contacts of True North with Ohio residents, thereby conferring specific jurisdiction over True North.

**SUBJECT MATTER JURISDICTION AND VENUE.**

15. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

16. Venue is proper in this District because True North does a sizeable portion of its business in this District; its principal place of business is located in this district; and the wrongs herein alleged occurred in this District.

**FLSA COVERAGE.**

17. At all times referenced herein, True North was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in

that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

18. At all times material to the Complaint, Plaintiffs and those similarly-situated directly participated in the actual movement of things in interstate commerce as part of their regular job duties and were subject to individual coverage under the FLSA.

**OMFWSA COVERAGE.**

19. At all times referenced herein, True North had a gross annual income of over $150,000.00, subjecting it to the overtime requirements of the OMFWSA.

**FACTUAL ALLEGATIONS.**

**(Defendant True North).**

20. True North is a fuel and convenience retailer with stores located throughout Ohio, Illinois, Wisconsin and Michigan.

21. At all times referenced herein, True North employed non-exempt, hourly employees to work at its stores.

22. True North is a repeat offender who has been sued several times for violating the FLSA, to include in the matters of *Taylor v. True North Management, LLC*, No. 2:2008cv00190 (S.D. Ohio); *Desai et al v. MIRA Enterprises LLC et al*, No. 1:09-cv-00935 (S.D. Ohio); *Williams v. True North Energy, LLC et al*, No. 1:2017cv02028 (N.D. Ohio); *Hamric v. True North Holdings, Inc. et al*, No. 1:2016cv01216; and most recently, *Glazier et al v. True North Energy, LLC*., No. 4:2020cv12540 (E.D. Michigan).

23. Rather than learning from these lawsuits and taking steps to ensure that it paid its employees in conformance with requirements of the FLSA, in or around 2019, True North attempted to limits its future exposure to FLSA lawsuits by adding a purportedly "binding" arbitration agreement and class action waiver to its employee handbook ("Arbitration Agreement").

24. The *Glazier* litigation was filed in the Eastern District of Michigan as a putative collective action.

25. True North responded to the Glazier litigation by moving the court to either dismiss or stay the litigation and to compel arbitration pursuant to the Arbitration Agreement.

26. The Plaintiffs in the *Glazier* litigation opposed True North's motion to compel arbitration.

27. On April 19, 2021, the *Glazier* court denied True North's motion to compel arbitration, finding that the Arbitration Agreement did not create an enforceable agreement:

> True North has failed to show that a valid, binding arbitration agreement exists between the Plaintiffs and TNM and/or TNE. First, the arbitration provision in the Handbook does not amount to binding agreement to arbitrate. As quoted above, the Handbook expressly disclaimed the creation of any binding obligations. It provided that it was not "an agreement, contract of employment, express or implied, or a promise of treatment in any particular manner in any given situation, nor d[id] it confer any contractual rights whatsoever." Moreover, the Handbook did not create an enforceable contract because it lacked mutuality of obligation: it did not impose any binding obligations on TNM and/or TNE. On the contrary, the Handbook provided that TNM "may, at any time, in its sole discretion, modify or vary from anything stated in the [Handbook], with or without notice...." This statement made clear that TNM and/or TNE "retain[ed] the right to decide whether or not to perform [a] promised act" described in the Handbook, and it therefore rendered illusory any promise TNM and/or TNE may have made. [*Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000)]. at 315-16 (holding that employer's promise to arbitrate disputes with employee was illusory, and "lack[ed] a mutuality of obligation," where employer "reserved the right to ... choose the nature of its performance" and "alter the applicable rules and procedures without any obligation to notify, much less receive consent from" its employees). See also id. at 315 (citing *Trumbull v. Century Marketing Corp*., 12 F.Supp.2d 683, 686 (N.D. Ohio 1998) for the proposition that an employer's agreement to arbitrate is illusory where it is included in the employer's handbook and employer retained the right to revoke provisions in the handbook). Because the Handbook disclaimed the creation of any contract and lacked mutuality of obligations, Plaintiffs are not bound by the arbitration provision in the Handbook.[2]

28. Upon information and belief, True North has not revised or changed its Arbitration Agreement since it was found to be unenforceable in *Glazier*.

29. Plaintiffs do not recall signing any arbitration agreement during their employment, but after searching True North's systems for a copy of the current handbook, have confirmed that the

[2] Full citation to *Floss* supplemented; original used a short cite.

employee handbook currently used by True North is the same 2019 handbook that contained the Arbitration Agreement invalidated by *Glazier*.

30. True North's repeated violations of the FLSA evidence that the violations of the FLSA alleged herein were willful, reckless, and committed by True North without a good faith belief that its conduct complied with the overtime requirements of the FLSA.

**(Plaintiff Zachary Mullins).**

31. Mullins is a former employee of True North.

32. Mullins was hired by True North in or around June or July of 2022.

33. Mullins worked for True North as a Lead Customer Service Representative in or around Columbus, Ohio.

34. At all times referenced herein, Mullins was paid on an hourly basis and was non-exempt from the overtime requirements of the FLSA.

35. In addition to his hourly pay, Mullins received a "shift premium" for working third shift.

36. At all times referenced herein, Mullins regularly worked in excess of 40 hours per week.

37. Throughout Mullins' employment, True North failed to pay him the proper overtime rate when he worked greater than 40 hours a week.

38. True North failed to pay Mullins the proper overtime rate by excluding the shift premium it paid him in the calculation of overtime, thus basing the overtime rate paid to Mullins on his predetermined hourly rate, rather on the regular rate. *See* 29 C.F.R § 778.109.

39. Mullins resigned from his employment with True North on or about September 7, 2022.

40. As a result of True North's failure to pay Mullins the proper overtime rate, Mullins has suffered damages.

**(Plaintiff Alex Wright).**

41. Wright is a current employee of True North.

42. Wright was hired by True North in or around July of 2022.

43. At all times referenced herein, Wright has been employed by True North as a Customer Service Representative in or around Columbus, Ohio.

44. At all times referenced herein, Wright was paid on an hourly basis and was non-exempt from the overtime requirements of the FLSA.

45. In addition to her hourly pay, Wright receives a "shift premium" for working third shift.

46. At all times referenced herein, Wright regularly worked in excess of 40 hours per week.

47. Throughout Wright's employment, True North has failed to pay her the proper overtime rate when she worked greater than 40 hours a week.

48. True North failed to pay Wright the proper overtime rate by excluding the shift premium it paid her in the calculation of overtime, thus basing the overtime rate paid to Wright on her predetermined hourly rate, rather on the regular rate. *See* 29 C.F.R § § 778.109.

49. As a result of True North's failure to pay Wright the proper overtime rate, Wright has suffered damages.

**(Plaintiff Mya Lynn Tinch).**

50. Tinch is a former employee of True North.

51. Tinch was hired by True North in or around June or July of 2022.

52. Tinch worked for True North as a Customer Service Representative in or around Columbus, Ohio.

53. At all times referenced herein, Tinch was paid on an hourly basis and was non-exempt from the overtime requirements of the FLSA.

54. In addition to her hourly pay, Tinch received a "shift premium" for working third shift.

55. At all times referenced herein, Tinch regularly worked in excess of 40 hours per week.

56. Throughout Tinch's employment, True North failed to pay her the proper overtime rate when she worked greater than 40 hours a week.

57. True North failed to pay Tinch the proper overtime rate by excluding the shift premium it paid her in the calculation of overtime, thus basing the overtime rate paid to Tinch on her predetermined hourly rate, rather on the regular rate. *See* 29 C.F.R § 778.109.

58. Tinch resigned from her employment with True North in September of 2022.

59. As a result of True North's failure to pay Tinch the proper overtime rate, Tinch has suffered damages.

**(Plaintiff Devin Graham).**

60. Graham is a current employee of True North.

61. Graham was hired by True North in or around July of 2022.

62. At all times referenced herein, Graham worked for True North as an Assistant Manager in or around Columbus, Ohio.

63. At all times referenced herein, Graham was paid on an hourly basis and was non-exempt from the overtime requirements of the FLSA.

64. In addition to her hourly pay, Graham receives a "shift premium" for working third shift.

65. At all times referenced herein, Graham regularly worked in excess of 40 hours per week.

66. Throughout Graham's employment, True North failed to pay her the proper overtime rate when she worked greater than 40 hours a week.

67. True North failed to pay Graham the proper overtime rate by excluding the shift premium it paid her in the calculation of overtime, thus basing the overtime rate paid to Tinch on her predetermined hourly rate, rather on the regular rate. *See* 29 C.F.R § 778.109.

68. As a result of True North's failure to pay Graham the proper overtime rate, Graham has suffered damages.

**(Plaintiff Amy Delehanty).**

69. Amy Delehanty is a former employee of True North.

70. Amy Delehanty was hired by True North in or around June of 2021.

71. Amy Delehanty was initially hired as a Shift Manager.

72. In or around September of 2021, Amy Delehanty was promoted to the role of Assistant Manager.

73. At all times referenced herein, Amy Delehanty worked for True North in Columbus, Ohio.

74. At all times referenced herein, Amy Delehanty was paid on an hourly basis and was non-exempt from the overtime requirements of the FLSA.

75. In addition to her hourly pay, Amy Delehanty received a "shift premium" for working third shift.

76. At all times referenced herein, Amy Delehanty regularly worked in excess of 40 hours per week.

77. Throughout Amy Delehanty's employment, True North failed to pay her the proper overtime rate when she worked greater than 40 hours a week.

78. True North failed to pay Amy Delehanty the proper overtime rate by excluding the shift premium it paid her in the calculation of overtime, thus basing the overtime rate paid to Tinch on her predetermined hourly rate, rather on the regular rate. *See* 29 C.F.R § 778.109.

79. Amy Delehanty's employment with True North ended on or about October 21, 2022.

80. As a result of True North's failure to pay Amy Delehanty the proper overtime rate, she has suffered damages.

**(Plaintiff Jessica Delehanty).**

81. Jessica Delehanty is a former employee of True North.

82. Jessica Delehanty was hired by True North in or around August of 2021.

83. Jessica Delehanty worked for True North as a Customer Service Representative in or around Columbus, Ohio.

84. At all times referenced herein, Jessica Delehanty was paid on an hourly basis and was non-exempt from the overtime requirements of the FLSA.

85. In addition to her hourly pay, Jessica Delehanty received a "shift premium" for working third shift.

86. At all times referenced herein, Jessica Delehanty regularly worked in excess of 40 hours per week.

87. Throughout Jessica Delehanty's employment, True North failed to pay her the proper overtime rate when she worked greater than 40 hours a week.

88. True North failed to pay Jessica Delehanty the proper overtime rate by excluding the shift premium it paid her in the calculation of overtime, thus basing the overtime rate paid to Jessica Delehanty on her predetermined hourly rate, rather on the regular rate. See 29 C.F.R § 778.109.

89. Jessica Delehanty employment with True North ended in or around December of 2021.

90. As a result of True North's failure to pay Jessica Delehanty the proper overtime rate, she has suffered damages.

**COLLECTIVE ACTION ALLEGATIONS**.

91. Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs.

92. At all times referenced herein, True North employed hourly employees who received a one dollar per hour shift premium for working third shift at its stores in Ohio, Illinois, Michigan, and Wisconsin.

93. As evidenced by the attached paystubs of Mullins, (Exhibit G), Grahams (Exhibit H), and Amanda Delehanty (Exhibit I), True North's failure to include the shift premium it pays to hourly employees is company wide and built into True North's payroll software.

94. True North's practice of not including Shift Differential Pay in the calculation of overtime was not limited to Plaintiffs and effected all members of the putative collective similarly.

95. As evidence by the attached job postings for various True North Stores in Ohio (Exhibit J), True North paid the same one dollar per hour shift differential to all hourly employees in Ohio who worked third shift.

96. True North's practice of not including Shift Differential Pay in the calculation of overtime was not limited to Plaintiffs and effected all members of the putative collective similarly.

97. As evidence by the attached job postings for a True North Store in Michigan (Exhibit K), True North paid the same one dollar per hour shift differential to all hourly employees in Michigan who worked third shift.

98. Defendants failed to include the shift premiums it paid in the overtime rate it paid to all hourly employees in Michigan.

99. As evidence by the attached job postings for various True North Stores in Illinois (Exhibit L), True North paid the same one dollar per hour shift differential to all hourly employees in Illinois who worked third shift.

100. Defendants failed to include the shift premiums it paid in the overtime rate it paid to all hourly employees in Illinois.

101. As evidence by the attached job posting for a True North Store in Wisconsin (Exhibit M), True North paid the same one dollar per hour shift differential to all hourly employees in Wisconsin who worked third shift.

102. Defendants failed to include the shift premiums it paid in the overtime rate it paid to all hourly employees in Wisconsin.

103. Plaintiffs bring this as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all similarly-situated individuals who are part of the following class:

> All persons who were employed in retail stores operated by True North Management, LLC, True North Holdings, LLC, and/or True North Energy, LLC for any length of time for the three years immediately preceding this action who were paid on an hourly basis and received a shift differential or shift premium.

104. Collective Action treatment of Plaintiffs' FLSA claim is appropriate because Plaintiffs and the FLSA Collective Class Members have been subjected to the same company-wide, common business practice referenced in Paragraphs 92-102 of the foregoing Complaint and the success of their claims depends on the resolution of common issues of law and fact, including, *inter alia*, whether True North's company-wide practices failed to properly compensate the FLSA Collective Class Members for all hours worked.

105. Additionally, Plaintiffs bring this as a collective action for all members of the FLSA Collective Class Members who worked in Ohio under O.R.C. § 4111.10(C)

**COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT.**

106. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-98, above.

107. The FLSA requires each covered employer, such as True North, to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

108. Plaintiffs and the FLSA Collective Class Members were not exempt from the right to receive overtime pay under the FLSA during their employment with True North.

109. Plaintiffs and the FLSA Collective Class Members are entitled to be paid overtime compensation for all overtime hours worked.

110. At all times relevant to this Complaint, True North had a policy and practice of failing to pay the proper overtime rate to its hourly employees by excluding shift differential payments from the calculation of the regular rate of pay and corresponding overtime rate.

111. True North either recklessly failed to investigate whether its failure to pay Plaintiffs and the FLSA Collective Class Members the proper overtime rate violated the Federal Wage Laws of the United States; it intentionally misled Plaintiffs and the FLSA Collective Class Members to believe that True North was paying overtime correctly, and/or True North

concocted a scheme pursuant to which it deprived Plaintiffs and the FLSA Collective Class Members of the overtime pay they earned.

112. True North's failure and refusal to pay Plaintiffs and the FLSA Collective Class Members the proper overtime wage for all overtime hours worked was willful, intentional, and not in good faith.

113. Plaintiffs and the FLSA Collective Class Members are entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

**COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. §§ 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME.**

114. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-109, above.

115. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

116. True North failed to pay Plaintiffs and the Ohio Collective Class Members the proper overtime rate for hours they worked over 40 each week.

117. In denying Plaintiffs and the Ohio Collective Class Members all overtime compensation they were due, True North violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

118. As a direct and proximate result of True North's unlawful conduct, Plaintiffs and the Ohio Collective Class Members have suffered and will continue to suffer a loss of income.

119. Having violated the OMFWSA, True North is liable to Plaintiffs and the Ohio Collective Class Members pursuant to Ohio R.C. § 4111.03 for the full amount of their unpaid overtime; liquidated damages; costs; and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests judgment in their favor against Defendants, containing the following relief:

(a) Designating this action as a collective action on behalf of Plaintiffs and the Collective they represent pursuant to the Fair Labor Standards Act, issuing notice pursuant to 29 U.S.C. § 216(b) to FLSA Collective Class Members apprising them of the pendency of this action, which will permit them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b), and equitably tolling the statute of limitations from the date of filing this Complaint until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. § 216(b);

(b) Designating this action as a collective action on behalf of Plaintiffs and the the Ohio Collective Class Members they represent pursuant to O.R.C. §4111.10(C) and allowing those putative class members who worked in Ohio and who elect to opt into the collective FLSA claims to opt into the Ohio Collective Claim;

(c) Designating each Plaintiff as a representative for both the FLSA Collective and the Ohio Law Collective;

(d) Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq;

(e) Awarding Plaintiff and the Collective unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

(f) Awarding pre-judgment and post-judgment interest as provided by law;

(g) Awarding reasonable attorneys' fees and costs; and

(h) Awarding such other and further relief that this Court deems appropriate

Respectfully submitted,

*/s/Chris P. Wido*
Chris Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**
25825 Science Park Drive, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Chris.Wido@Spitzlawfirm.com

*Attorney for Plaintiffs*

**JURY DEMAND**

Plaintiffs demand a trial by jury by the maximum number of jurors permitted.

*/s/Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**